IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| PAMELA W.,[1] | ) |
| | ) |
|         **Plaintiff,** | ) |
| | )   **CIVIL ACTION** |
| v. | ) |
| | )   No. 19-1232-JWL |
| ANDREW M. SAUL, | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|         **Defendant.** | ) |
| _____ | ) |

**MEMORANDUM AND ORDER**

Plaintiff seeks review of a decision of the Commissioner of Social Security denying Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to sections 216(i), 223, 1602, and 1614 of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381a, and 1382c (hereinafter the Act). Finding no error in the Administrative Law Judge's (ALJ) evaluation of the medical opinions and prior administrative medical findings pursuant to the regulations applicable to claims filed after March 27, 2017, the court ORDERS that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

**I.     Background**

---

[1] The court makes all its "Memorandum and Order[s]" available online. Therefore, in the interest of protecting the privacy interests of Social Security disability claimants, it has determined to caption such opinions using only the initial of the Plaintiff's last name.

Plaintiff filed applications for DIB and SSI benefits on June 28, 2017. (R. 19). After exhausting administrative remedies before the Social Security Administration (SSA), Plaintiff filed this case seeking judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g). Plaintiff claims the ALJ erred in evaluating the medical opinions of her treating medical providers, Dr. Goodman and Mr. Ahrens. (Pl. Br. 10).

The court's review is guided by the Act. Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). Section 405(g) of the Act provides that in judicial review "[t]he findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). The court must determine whether the ALJ's factual findings are supported by substantial evidence in the record and whether he applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); accord, White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001). "Substantial evidence" refers to the weight, not the amount, of the evidence. It requires more than a scintilla, but less than a preponderance; it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); see also, Wall, 561 F.3d at 1052; Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988). Consequently, to overturn an agency's finding of fact the court "must find that the evidence not only supports [a contrary] conclusion, but compels it." I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481, n.1 (1992) (emphases in original).

The court may "neither reweigh the evidence nor substitute [its] judgment for that of the agency." Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008) (quoting Casias v. Sec'y of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991)); accord,

Hackett v. Barnhart, 395 F.3d 1168, 1172 (10th Cir. 2005); see also, Bowling v. Shalala, 36 F.3d 431, 434 (5th Cir. 1994) (The court "may not reweigh the evidence in the record, nor try the issues de novo, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision.") (quoting Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988)).  Nonetheless, the determination whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

The Commissioner uses the familiar five-step sequential process to evaluate a claim for disability.  20 C.F.R. §§ 404.1520, 416.920; Wilson v. Astrue, 602 F.3d 1136, 1139 (10th Cir. 2010) (citing Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988)).  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary."  Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity since the alleged onset, whether she has a severe impairment(s), and whether the severity of her impairment(s) meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Williams, 844 F.2d at 750-51.  After evaluating step three, the Commissioner assesses claimant's residual functional capacity (RFC).  20 C.F.R. § 404.1520(e).  This assessment is used at both step four and step five of the sequential evaluation process.  Id.

The Commissioner next evaluates steps four and five of the process—determining at step four whether, considering the RFC assessed, claimant can perform her past relevant work; and at step five whether, when also considering the vocational factors of age, education, and work experience, she is able to perform other work in the economy. Wilson, 602 F.3d at 1139 (quoting Lax, 489 F.3d at 1084).  In steps one through four the burden is on Plaintiff to prove a disability that prevents performance of past relevant work.  Blea v. Barnhart, 466 F.3d 903, 907 (10th Cir. 2006); accord, Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show that there are jobs in the economy which are within the RFC previously assessed.  Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

## II.     Discussion

Plaintiff points out that "the ALJ found the medical opinions of [Plaintiff's] treating mental health providers, Dr. Goodman and Nurse Ahrens, to be unpersuasive, and instead, found the non-examining State agency consultant's opinion to be persuasive." (Pl. Br. 11) (citing R. 30).  She argues, "The ALJ erred by failing to provide sufficient reasons supported by substantial evidence to discount the medical opinions of Dr. Goodman and Nurse Ahrens, [Plaintiff's] treating licensed psychologist and medication manager." Id.  She argues the inconsistencies upon which the ALJ relied to discount her treating source's opinions "did not exist" and her ability to work part time is not inconsistent with the opinions.  Id. at 12.  She argues her ability to obtain guardianship over a young child is not inconsistent with the opinions, id. at 13-4, and the

4

ALJ's finding that the extreme limitations opined are inconsistent with the treatment records misunderstands the treatment records because "those records do not illustrate the improvement assumed by the ALJ and any improvement is still not inconsistent with the treating providers' opinions." (Pl. Br. 14). She argues that even if the ALJ weighed the opinions properly he nonetheless "erred by relying on the non-examining State [sic] agency consultant opinion in the face of the two treating source opinions that were consistent with each other and supported by the treatment record showing severe conditions with a guarded prognosis." Id. at 15 (citing Roney v. Barnhart, No. 02-4115-JAR, 2004 WL 1212049, at *5 (D. Kan. May 27, 2004) for the proposition that a state agency "consultant's opinion deserved the least weight of all."). Plaintiff concludes her argument:

> The ALJ failed to provide reasons supported by substantial evidence to conclude that the opinions of Dr. Goodman and Nurse Ahrens were inconsistent and unsupported by the record as a whole. Rather, these opinions were consistent with each other and consistent with treatment notes revealing a guarded prognosis and severe condition despite good progress and positive response to treatment. Contrary to the ALJ's conclusions, these opinions were not inconsistent with [Plaintiff's] part-time work, guardianship over a 10-year-old boy she'd known since infancy, or treatment notes. Remand is required for the ALJ to appropriately weigh the treating source opinions and create a mental RFC supported by substantial evidence.

(Pl. Br. 16).

The Commissioner begins his argument by pointing out that for claims filed after March 27, 2017, he propounded through notice and comment rulemaking a new and different regulatory framework for evaluating medical evidence. (Comm'r Br. 6-10). He argues the court should affirm the Commissioner's decision in this case because the

5

ALJ's decision is supported by the record evidence. He argues "the ALJ reasonably discounted Plaintiff's subjective reports and reasonably found the findings of Dr. Watson and Dr. Anthoney [(the state agency consultant psychologists who made the prior administrative medical findings)] persuasive and the opinions from Dr. Goodman and Nurse Ahrens not persuasive." (Comm'r Br. 11) (citing R. 29-31). He argues that "to the extent Plaintiff refers to "weight" and "weigh[ing]," her arguments plainly misapprehend the applicable new regulatory standard for evaluating medical opinions and prior administrative medical findings." Id. at 12. He argues that the ALJ explained his reasons for discounting the opinions of Dr. Goodman and Mr. Ahrens, noting that his finding of inconsistency between the extreme limitations and the treating records was more important than his findings of inconsistency in the ability to work part-time and to become a guardian to a young child. Id. at 13. The Commissioner argues that Plaintiff "merely invites the Court to reweigh the evidence and reach different conclusions than the ALJ reached with substantial record support." Id. at 14.

### A. Standard for Evaluating Medical Opinions and Prior Administrative Medical Findings

Effective March 27, 2017, the regulations expanded the definition of "acceptable medical source" to include licensed audiologists for certain impairments, and licensed Advanced Practice Registered Nurses and licensed Physician Assistants within their licensed scope of practice. Compare 20 C.F.R. § 404.1502 (2017), with 20 C.F.R. §§ 404.1502, 404.1513 (2016). In the new regulations, the Commissioner found that certain evidence, including decisions by other governmental agencies and

nongovernmental entities, disability examiner findings, and statements on issues reserved to the Commissioner, "is inherently neither valuable nor persuasive to the issue of whether you are disabled or blind under the Act, [and the SSA] will not provide any analysis about how we considered such evidence in our determination or decision." 20 C.F.R. § 404.1520b(c) (2017).

In the new regulations, the Commissioner explicitly delineated five categories of evidence including objective medical evidence, medical opinion, other medical evidence, evidence from nonmedical sources, and prior administrative medical findings. 20 C.F.R. § 404.1513 (2017). The regulations define objective medical evidence as "medical signs, laboratory findings, or both." 20 C.F.R. § 404.1513(a)(1) (2017). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 404.1513(a)(3) (2017). "Evidence from nonmedical sources is any information or statement(s) from a nonmedical source (including you) about any issue in your claim." 20 C.F.R. § 404.1513(a)(4) (2017).

The regulation defines "medical opinion" and "prior administrative medical finding:"

> (2) Medical opinion. A medical opinion is a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions in the following abilities: …
>
>> (i) Your ability to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling,

7

>or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching);
>
>(ii) Your ability to perform mental demands of work activities, such as understanding; remembering; maintaining concentration, persistence, or pace; carrying out instructions; or responding appropriately to supervision, co-workers, or work pressures in a work setting;
>
>(iii) Your ability to perform other demands of work, such as seeing, hearing, or using other senses; and
>
>(iv) Your ability to adapt to environmental conditions, such as temperature extremes or fumes.
>
>\*\*\*
>
>(5) Prior administrative medical finding.  A prior administrative medical finding is a finding, other than the ultimate determination about whether you are disabled, about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review (see § 404.900) in your current claim based on their review of the evidence in your case record, such as:
>
>(i) The existence and severity of your impairment(s);
>
>(ii) The existence and severity of your symptoms;
>
>(iii) Statements about whether your impairment(s) meets or medically equals any listing in the Listing of Impairments in Part 404, Subpart P, Appendix 1;
>
>(iv) Your residual functional capacity;
>
>(v) Whether your impairment(s) meets the duration requirement; and
>
>(vi) How failure to follow prescribed treatment (see § 404.1530) and drug addiction and alcoholism (see § 404.1535) relate to your claim.

20 C.F.R. § 404.1513(a)(4) (2017).

The regulations include a new section entitled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after

8

March 27, 2017." 20 C.F.R. § 404.1520c (2017).  The regulation provides that the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. § 404.1520c(a) (2017).  The regulation provides that the SSA will consider each medical source's opinions using five factors; supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a),(c)(1-5) (2017).  It provides that the most important factors in evaluating persuasiveness are supportability and consistency.  Id.

The regulation explains that the decision will articulate how persuasive the SSA finds all medical opinions and prior administrative medical findings for each source but not for each opinion of that source separately.  20 C.F.R. § 404.1520c(b)(1) (2017).  It requires that the SSA "will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in your determination or decision.  We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record." 20 C.F.R. § 404.1520c(b)(2) (2017).  The regulation explains that when the decision-maker finds two or more medical opinions or prior administrative medical findings are equal in supportability and consistency "but are not exactly the same," the decision will articulate the other most persuasive factors from paragraphs (c)(3) through (c)(5).  20 C.F.R. § 404.1520c(b)(3) (2017).  Finally, the

regulation explains that the SSA is not required to articulate how it considered evidence from non-medical sources. 20 C.F.R. § 404.1520c(d) (2017).

## B.     The ALJ's Findings

The ALJ stated he "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and 416.929 and SSR (Soc. Sec. Ruling)16-3p, [and] also considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c and 416.920c." (R. 26).  He found Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." Id. at 27.

As Plaintiff puts at issue here, the ALJ explained his evaluation of the medical opinions and prior administrative medical findings regarding Plaintiff's mental abilities:

> The undersigned has considered the opinions of Dr. Goodman and Mr. Ahrens, and is not persuaded by either opinion.  For one, the marked limitations and excessive time off work and off task is simply inconsistent with the claimant's ability to work part-time for 5 to 6 hours at a time.  It is also inconsistent with the claimant's ability to obtain guardianship over a young child.  More importantly, the extreme limitations set forth by Dr. Goodman and Mr. Ahrens is [sic] inconsistent with their own treatment records---many of which indicate that the claimant was making good progress through medication and therapy. (See B23F, B24F).  Thus, the evidence does not support such extreme functional limitations as proposed by Dr. Goodman and Mr. Ahrens, and the undersigned is not persuaded by the same.
>
> In March of 2018, Sarah Anthoney, Ph.D., reviewed the claimant's records and provided an opinion on behalf of the State Disability Determination

> Service (Exhibits B8A). This opinion indicated the claimant is "moderately" limited in the ability to understand, remember, and carry out detailed instructions, maintain attention and concentration for extended periods, work in coordination with or in proximity to others without being distracted by them, in the ability to complete a normal workday without interruptions from psychologically based symptoms, get along with co-workers or peers without distracting them or exhibiting behavioral extremes, and in her ability to respond appropriately to changes in the work setting. Additionally, Dr. Anthoney opined that the claimant was markedly limited in her ability to interact with the general public. This opinion is generally consistent with the record. Limitations in these areas are reasonable given the claimant's allegations. While additional issues appear present at times, such problems are rare and infrequent, and they do not support ongoing functional restrictions. Given such issues, the undersigned finds a limitation to simple work, with limited contact with others is warranted, as described in the residual functional capacity. This is based on the opinion provided here. Ultimately, the undersigned is persuaded by this opinion, as it is consistent with the record as a whole and supported by explanation.
>
> A prior opinion from Charles W. Watson, Ph.D., also on behalf of the State Disability Determination Service, contained similar limitations (Exhibits B2A). It was also found to be persuasive for the reasons set forth, above.

(R. 30-31).

## C.   Analysis

Plaintiff has shown no error in the ALJ's evaluation of the medical opinions and prior administrative medical findings. Plaintiff's arguments misunderstand the ALJ's findings and the standards applicable to this case. The ALJ provided three reasons he found Dr. Goodman's and Mr. Ahrens's medical opinions not persuasive. Most importantly, he found Plaintiff's treating sources' "extreme limitations" inconsistent with their treatment records. Plaintiff admits Dr. Goodman acknowledged openness to treatment, cooperation, and progress with treatment, but argues the treatment records do not illustrate the improvement assumed by the ALJ because Dr. Goodman continually

11

characterized Plaintiff's diagnoses as severe and found her prognosis guarded or fair. (Pl. Br. 15). What Plaintiff misses or ignores is that Dr. Goodman opined she is <u>markedly</u> limited in her ability to understand, remember, and carry out detailed instructions, in her ability to complete a normal workday free from interruptions from psychologically based symptoms, in her ability to get along with coworkers without distracting them, and in her ability to travel to unfamiliar places or use public transportation; and Mr. Ahrens opined Plaintiff is <u>extremely</u> limited in her ability to understand, remember, and carry out detailed instructions, to complete a normal workday without interruption, and to travel to unfamiliar places or use public transportation, and is <u>markedly</u> limited in her ability to perform activities within a normal schedule. It is these limitations to which the ALJ was referring and which are, in fact, inconsistent with the treatment records' findings "without psychotic symptoms," "no signs of delusions or hallucinations," "good response to treatment," "good progress," "a very good session overall," "extremely open and spontaneous," "her speech and sentence structure were appropriate," that Dr. Goodman had a "good rapport with her," and "rage issue is better than it was." (R. 946-65 (<u>passim</u>)). The ALJ did not find that Plaintiff did not have limitations or that her condition was not severe. Rather, he properly found that the opinions of <u>extreme limitations</u> were inconsistent with the treatment records.

The ALJ also found the opinions regarding marked limitations and excessive time off work and off task inconsistent with the ability to work part-time for 5 or 6 hours at a time and the ability to obtain guardianship over a young child. Plaintiff argues these inconsistencies do not exist. She argues the ability to work part-time 5 to 6 hours at a

time does not exist because although she testified that she has worked up to 5 or 6 hours at a time before, she did not testify this was a common occurrence or that she usually worked a full 12 hours each week. Plaintiff is correct in her argument, to the extent that her testimony did not require the ALJ's finding. However, the ALJ's finding is the sort of finding a reasonable mind might reach from the record evidence, and as such it is supported by substantial evidence. At the hearing, the ALJ asked Plaintiff if her part-time work was exactly twelve hours a week and she responded, "It is not more than 12 hours a week" (R. 49), and after the ALJ stated, "Okay," she added, perhaps as an afterthought, "Sometimes it is less than 12 hours a week." (R. 50). The following colloquy ensued as the ALJ sought the usual schedule Plaintiff followed:

> … How do you get those 12 hours in a week, is really what I'm asking?
>
> A  It kind of depends on where I'm needed.
>
> Q  Okay.
>
> A  I'm basically covering for time off for another person, when they need –
>
> Q  Okay. So, do you work kind of generally three hours out of time? [sic] Four hours at a time? Five?
>
> A  I have worked up to five, six hours at a time before.
>
> Q  Okay. So, are you more likely to do this -- get those 12 hours working two days a week, or three days a week, or four?
>
> A  Two, or three days.

(R. 50). This colloquy supports the ALJ's finding that Dr. Goodman's and Mr. Ahrens's opinion "is inconsistent with the claimant's ability to work part time for 5 to 6 hours at a time." (R. 30). Plaintiff testified that she has worked up to 5 or 6 hours in her part-time

13

job and that she is "more likely" to work 2 or 3 days a week "covering for time off for another person." On these facts, Plaintiff did not testify that she works 5 to 6 hours frequently but she did testify that she has worked 5 to 6 hours at a time, clearly indicating that she is capable of doing so, and that capability is inconsistent with Dr. Goodman's and Mr. Ahrens's opinions.

Consideration of the issue of Plaintiff's ability to obtain guardianship over a young child despite the opined marked and extreme limitations and being off-task 25 percent of the time, produces the same result. Plaintiff assumes that the ALJ was suggesting that due to the opined limitations she would be <u>unable to go through the process</u> to obtain a guardianship. (Pl. Br. 13). However, as Plaintiff argues, and as she testified, she was represented by an attorney in the process and she did not have to appear in court. The ALJ was aware of these facts, and he explained that her opined limitations were inconsistent with obtaining a guardianship. The limitations which argue against being awarded guardianship of a young child are the opined limitations of being unable to work four or more days a month, being off-task 25 percent of the time, and an <u>extreme limitation</u> in the ability to complete a normal <u>workday</u> without interruptions from psychologically based symptoms. In light of the opined limitations on the ability to perform an 8-hour workday compared with the requirements of caring for a young child 24 hours a day, seven days a week, 365 days a year, it is inconsistent that an individual with such limitations would seek such guardianship or that a court knowing such limitations would award guardianship. Plaintiff has shown no error in the ALJ's reasons for being unpersuaded by the mental healthcare providers' medical opinions.

Plaintiff's remaining argument, that the ALJ "erred by relying on the non-examining State [sic] agency consultant opinion in the face of the two treating source opinions that were consistent with each other and supported by the treatment record showing severe conditions with a guarded prognosis," misunderstands the regulatory standard for evaluating medical opinions and prior administrative medical findings.  (Pl. Br. 15) (citing Roney v. Barnhart, No. 02-4115-JAR, 2004 WL 1212049, at *5 (D. Kan. May 27, 2004) amended on recon. 2004 WL 1375744 (D. Kan. June 14, 2004)) for the proposition that a state agency "consultant's opinion deserved the least weight of all."). As noted above, in his new regulations, the Commissioner explained that he "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."  20 C.F.R. § 404.1520c(a) (2017).  He explained that he will consider each medical source's opinions using the five factors, supportability, consistency, relationship of source to claimant, specialization, and other factors tending to support or contradict a medical opinion or prior administrative medical finding.  20 C.F.R. § 404.1520c(a), (c)(1-5) (2017).  Under the new regulations, there is no hierarchy of medical opinions as there was under the treating physician rule as used with claims filed before March 27, 2017.  In publishing his final rule, the Commissioner explained one of his reasons for eliminating the treating physician rule:

> Courts reviewing claims under [the rules in effect for claims filed before March 27, 2017] have focused more on whether we sufficiently articulated the weight we gave treating source opinions, rather than on whether substantial evidence supports our final decision.  As the Administrative Conference of the United States' (ACUS) Final Report explains, these

15

courts, in reviewing final agency decisions, are reweighing evidence instead of applying the substantial evidence standard of review.

Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844-01, 5,853 (Soc. Sec. Admin. Jan. 18, 2017) 2017 WL 168819.  Because Plaintiff has shown no error in the ALJ's reasons for finding the treating mental healthcare providers' opinions unpersuasive, the court will affirm the Commissioner's final decision. However, it is worthy to note that the court has reviewed the ALJ's reasons for finding the prior administrative medical findings persuasive and finds them to be supported by the record evidence also.

**IT IS THEREFORE ORDERED** that judgment shall be entered pursuant to the fourth sentence of 42 U.S.C. § 405(g) AFFIRMING the Commissioner's final decision.

Dated July 21, 2020, at Kansas City, Kansas.

s:/ *John W. Lungstrum*
**John W. Lungstrum**
**United States District Judge**